UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT JUDGE** | **MARTIN LUTHER KING COURTHOUSE**<br>**50 WALNUT ST. ROOM 4066**<br>**NEWARK, NJ 07101**<br>**973-297-4903** |

September 14, 2023

VIA ECF

## LETTER ORDER

Re:   Smith v. Experian Information Solutions, Inc.,
      Civil Action No. 22-06471

Dear Litigants:

Before the Court is Defendant Experian Information Solutions, Inc.'s ("Defendant" or "EIS") Motion to Compel Arbitration (the "Motion"), ECF No. 11. Plaintiff Sean P. Smith ("Plaintiff") opposes the Motion, ECF No. 13. For the reasons explained below, Defendant's Motion is **GRANTED**.

**I.   BACKGROUND**

This action, brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., ("FCRA"), arises out of a dispute over allegedly false reporting on Plaintiff's credit report. See generally Compl., ECF No. 1. Specifically, Plaintiff alleges that his mortgage application was approved for unfavorable interest rates because of inaccurate information contained in his Experian consumer credit report. Compl. ¶¶ 21–24. Plaintiff further alleges that Defendant failed to conduct a reasonable investigation and correct the inaccurate information. Id. ¶¶ 40–43, 136–37.

During all relevant times, Plaintiff maintained an account with CreditWorks, a credit monitoring service with Experian Consumer Services ("ECS").[1] Def.'s Mot. Compel Arb. 2; see also Pl.'s Resp. 1. Upon enrolling in CreditWorks on October 14, 2018, Plaintiff entered into a clickwrap Terms of Use agreement (the "Original Terms of Use"). Mot. 2; Resp. 10. The Original Terms of Use included the following arbitration clause:

> ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites, except any disputes or claims which under governing law

---

[1] Defendant asserts, and Plaintiff does not adequately dispute, that EIS is an affiliate of ECS. See Mot. 8; Williams Decl. ¶¶ 2, 6; Resp. 18 (noting, without providing further argument or evidence, that EIS is "allegedly an affiliate" of ECS); see also Meeks v. Experian Information Solutions, Inc., No. 21-17023, No. 22-15028, 2022 WL 17958634 at *1–2 (9th Cir. Dec. 27, 2022) (finding under the same agreement that EIS is an affiliate of ECS). Thus, according to the language defining the parties to the agreements at issue, Plaintiff entered into an agreement with Defendant. See Williams Decl., Ex. 3, at 6; Ex. 4, at 8.

> are not subject to arbitration. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law. However, for the avoidance of doubt, any dispute you may have with us arising out of the Fair Credit Reporting Act (FCRA) relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies, shall not be governed by this agreement to arbitrate.

[Williams Decl. Ex. 3, at 5–6.]

The Original Terms of Use were amended on July 28, 2022, (the "Amended Terms of Use" and, together with the Original Terms of Use, the "Terms of Use Agreements") largely to remove the exception that FCRA disputes are not subject to arbitration. Williams Decl. Ex. 4, at 7.

Both Terms of Use Agreements contain a delegation provision—a provision that delegates the resolution of issues, including those of scope and enforceability, to an arbitrator:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable.

[Williams Decl. Ex. 3, at 7; Ex. 4 at 8–9.]

On November 4, 2022, Plaintiff initiated this action against Defendant for willful and negligent violations of the FCRA ("Counts One and Two"), Compl. ¶¶ 127–41, to which Defendant filed its answer on December 19, 2022, see generally Answer. In the two and a half months following Defendant's answer, the parties engaged in certain litigation conduct: the parties submitted a joint discovery plan, attended a Rule 26(f) conference and an initial case management conference, and initiated discovery, such as interrogatories and requests for production. On March 1, 2023, Defendant filed this Motion.

## II. LEGAL STANDARD

The Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA"), provides that "[a] written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "a strong federal policy in favor of resolving disputes through arbitration." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009).

When considering whether a valid arbitration agreement exists, the Court must first determine whether to apply a Rule 12(b)(6) motion to dismiss standard or a Rule 56 summary

2

judgment standard.  "[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."  Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted).  However, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, . . . the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question."  Id. (alteration in original) (citation omitted).  After limited discovery is conducted, the court may entertain a renewed motion to compel arbitration under a summary judgment standard.  Id.  Because the arbitration issue here is not apparent on the face of the complaint, the Court will review the Motion under the summary judgment standard.

Under this standard, a court shall grant a motion to compel when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  When applying the summary judgment standard, "the court must draw all reasonable inferences in favor of the nonmoving party."  Guidotti, 716 F.3d at 772.

### III. ANALYSIS

#### A. Valid Arbitration Agreement

When a district court is presented with a motion to compel arbitration, it typically answers two questions before compelling arbitration: (1) whether the parties entered into a valid arbitration agreement and (2) whether the dispute falls within the scope of the arbitration agreement.  Century Indem. Co., 584 F.3d at 523.  "However, when an arbitration provision, by 'clear and unmistakable' evidence,' contains a valid delegation clause, the court's inquiry is limited to the first step: determining whether a valid agreement to arbitrate exists."  Coulter v. Experian Info. Sols., Inc., No. 20-1814, 2021 WL 735726, at *4 (E.D. Pa. Feb. 25, 2021) (quoting Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. ___, 139 S. Ct. 524, 530 (2019)).

As to the first question, Defendant argues that the Terms of Use Agreements were clickwrap agreements, that such agreements are valid under New Jersey law, and that Plaintiff manifested his assent to enter into at least one of the agreements.  Mot. 6–8.  Plaintiff does not dispute the validity of the Terms of Use Agreements.  Instead, Plaintiff argues that the arbitration clause is not enforceable because no arbitrable issue exists.[2]  Resp. 10–19.  Specifically, Plaintiff argues that he agreed only to the Original Terms of Use, which carves out FCRA claims from the arbitration clause, and thus renders his claims—both of which allege FCRA violations—not subject to arbitration.  Id.

But whether the arbitration clause applies to FCRA claims is an issue of scope.  That issue is for the arbitrator where, as here, there is a valid delegation clause.  See Henry Schein, Inc., 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."); see also Rosenberg v. Hotel Connections, Inc., No. 21-4876, 2022 WL 7534445, at *6 (D.N.J. Oct. 13, 2022) ("Where the arbitration agreement is broadly

---

[2] Plaintiff also cites precedent on the standard for challenging a delegation clause but does not argue why the delegation clause in question is invalid.  See Resp. 10–11.  To the contrary, Plaintiff cites cases in which courts hold that this specific delegation clause is valid.  See, e.g., Coulter, 2021 WL 735726, at *4.

3

worded to require the submission of 'all disputes' to the arbitrator, the parties intended to arbitrate the question of arbitrability."). Regardless of which Terms of Use is in effect,[3] the Plaintiff would still be subject to a valid arbitration clause, as well as a valid delegation clause that requires referral to the arbitrator to determine the scope of the arbitration clause—i.e., whether the arbitration clause covers FCRA claims. This principle also applies to Plaintiff's alternative argument that the FCRA claims do not "aris[e] out of or relat[e] to" the Amended Terms of Use. See Resp. 14–19. This too is an issue of scope and, therefore, should be referred to the arbitrator.

Plaintiff argues, however, that such a result would be futile: if the Old Terms of Use apply, and FCRA claims are exempt from arbitration, referring the case to the arbitrator to likely have them send it back to the Court is a waste of time. Id. at 19–20. But "[w]hen the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." Henry Schein, Inc., 139 S. Ct. 529 (emphasis added).

## B. Waiver of Right to Arbitrate

Plaintiff argues that, even if there is a valid arbitration agreement and an arbitrable issue, Defendant waived its right to arbitrate by engaging in litigation conduct, including filing an answer, attending Rule 16 and Rule 26(f) conferences, submitting a joint discovery plan, and serving written interrogatories and requests for production and admission. Resp. 4–10. Defendant counters that this waiver issue is one of arbitrability and should be referred to the arbitrator because it is covered by the broad language of the delegation clause. Def.'s Reply 9–10 ("'All issues' plainly subsumes waiver, including waiver by litigation conduct."). Waiver through litigation conduct, however, is a legal issue for the Court, and the Court is satisfied that Defendant did not waive its right to arbitrate.

In the Third Circuit, the presumption is that courts, not arbitrators, should decide whether a party has waived its right to arbitrate by engaging in litigation conduct. Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 218–19 (3d Cir. 2007). And "[a]n issue that is presumptively for the court to decide will be referred to the arbitrator for determination only where the parties' arbitration agreement contains 'clear and unmistakable evidence' of such an intent." Id. at 221. Defendant attempts to distinguish Ehleiter by arguing that (1) the "all issues" language is broad enough to capture the issue of waiver by litigation conduct and (2) the agreement in Ehleiter, unlike the arbitration clause here, did not incorporate the Rules of the American Arbitration Association (the "AAA Rules"). Reply 10. The Court disagrees.

First, the agreement in Ehleiter provided for the delegation of "the issue of arbitrability of any claim or dispute." Ehleiter, 482 F.3d at 221–22 (emphasis added). This language is just as broad as the instant "all issues" language. Moreover, the Third Circuit explicitly noted that such broad language, without more specificity, was not enough to capture the issue of waiver by

---

[3] The Third Circuit has held that a court should decide the issue of whether a second contract has superseded the first before compelling arbitration, but this is only when such a decision would lead to a determination that absolutely no valid arbitration agreement exists, as opposed to a decision that would anyway result in referring a case to arbitration for a determination of scope. See Field Intel. Inc. v. Xylem Dewatering Sols. Inc., 49 F.4th 351, 360 (3d Cir. 2022) (second agreement contained no arbitration clause, and thus supersession would mean that no valid arbitration agreement exists).

litigation conduct. Id. at 222 ("There are no references to waiver of arbitration in this or any other provision of the Agreement."). The Third Circuit requires more than broad language to "giv[e] the arbitrators [the] power . . . to arbitrate a matter [a party] reasonably would have thought a judge, not an arbitrator, would decide." Id. (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995)).

Second, the AAA Rules do not move the dial. The AAA Rules "apply . . . at the time the administrative filing requirements are met for a demand for arbitration." AM. ARB. ASS'N, COM. ARB. RULES AND MEDIATION PROC. 7 (2013). They have no bearing on litigation conduct. The broad grant of authority to arbitrators to determine their jurisdiction cannot contravene Third Circuit precedent. If anything, it simply reinforces the presumption that arbitrators have the authority, when there is a valid, broadly worded delegation clause, to decide issues such as "waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration." Ehleiter, 482 F.3d at 219.

Recently, the "Supreme Court rejected the prejudice-focused inquiry" and instead directed courts to ask whether the moving party "intentional[ly] relinquish[ed] or abandon[ed] . . . a known right." White v. Samsung Elecs. Am., Inc., 61 F.4th 334, 339–40 (3d Cir. 2022) (alteration in original) (quoting Morgan v. Sundance, Inc., 596 U.S. ___, 142 S. Ct. 1708, 1713 (2022)). Therefore, the Court "focuses on the actions of the person who held the right . . . [not] the effects of those actions on the opposing party." Morgan, 142 S. Ct. 1708, 1713.

Here, Defendant did not intentionally relinquish its right to arbitrate. Defendant filed an answer, attended two conferences, and engaged in the early stages of pre-trial discovery. Resp. 8–10. These are all early-stage activities that took place within four months of Plaintiff initiating the action. Importantly, Defendant has not engaged in any other motions practice. For example, Defendant did not file this Motion after an unsuccessful motion to dismiss. Other courts in this circuit have found lack of waiver when faced with similar facts. See, e.g., Zenon v. Dover Downs, Inc., No. 21-1194, 2022 WL 2304118, at *2 (D. Del. June 27, 2022) (no waiver when defendant filed an answer that did not mention arbitration, served initial disclosures, and did not engage in other motions practice); Russo v. Trans Union, LLC, No. 19-4007, 2020 WL 4937108, at *5–7 (E.D. Pa. Aug. 24, 2020) (no waiver when defendant filed an answer, acquiesced to case management orders, and submitted discovery plan).

Therefore, the Court finds that Defendant did not waive its right to arbitrate, and the Court will accordingly compel this matter to arbitration.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion, ECF No. 11, is **GRANTED**, and it is hereby **ORDERED** that the action is **STAYED** pending arbitration.

SO ORDERED.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

5